IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN BELL,

      Plaintiff,                             No. 2:10-cv-01137 KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                          <u>ORDER</u>

/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income benefits under Title XVI of the Act.[1] In his motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) relying on plaintiff's medical records and the examining opinions evaluating plaintiff's mental health provided by Phyllis Williamson, Ph.D. and Timothy Canty, M.D. in assessing plaintiff's residual functional capacity, rather than the examining opinion of Shohreh Ghaemian, M.D.; (2) finding

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 6, 9.)

1

that plaintiff's testimony regarding the impact of his mental conditions on his ability to work was not credible to the extent that it was inconsistent with the residual functional capacity found by the ALJ; (3) adopting but failing to "accurately summarize" the third-party lay witness reports provided by James A. Beal; and (4) not calling a vocational expert to testify about plaintiff's ability to work. (See generally Pl.'s Mot. for Summ. J., Dkt. No. 17.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Defs.' Cross-Motion for Summ. J., Dkt. No. 18.) Plaintiff chose not to file a reply brief. For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.  BACKGROUND[2]

In March 2007, plaintiff filed applications for Disability Insurance Benefits and Social Security Income that alleged a disability onset date of May 6, 2004. (See Admin. Tr. ("AT") 4-9, 13, 119.) The Social Security Administration denied plaintiff's applications initially and upon reconsideration. (See AT 4-9, 26-41.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's applications on October 29, 2008. (AT 42-43, 47, 53, 57, 66-86.) Plaintiff testified at the hearing and was represented by counsel. Plaintiff also submitted, and the ALJ considered, two third-party function reports prepared by plaintiff's friend and landlord, Mr. Beal. (AT 21, 141-48, 179-86.) The ALJ did not call a vocational expert to testify at the hearing about plaintiff's ability to perform work.

In a written decision dated December 15, 2008, the ALJ denied plaintiff's applications for benefits based on a finding that plaintiff was "capable of performing his past

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only as necessary to resolve the issues presented by the parties' respective motions.

relevant work as a Production Worker."[3]  (AT 21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 23-25, 92.)  Plaintiff subsequently filed this action.

  B.  <u>Summary of the ALJ's Findings</u>

    The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had actually "engaged in substantial gainful employment after May 6, 2004 the alleged onset date

---

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  <u>See</u> 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id.</u>

1  until approximately May of 2006." (AT 15.)  The ALJ noted that plaintiff had worked at Camp
2  Pendleton as a "mess hall attendant" for about one year, but that employment ended "due to a
3  verbal confrontation with the building manager." (Id.)  He also found that plaintiff worked as a
4  "Production Worker" at the Sacramento Bee newspaper, stacking newspapers and loading them
5  into a sorting machine. (Id.; see also AT 71.)  The ALJ noted that plaintiff was "fired due to a
6  verbal confrontation with a non-employee." (AT 15.)  Although the ALJ found that plaintiff
7  engaged in substantial gainful employment after the alleged date of onset and likely could have
8  found plaintiff not disabled at that point in the analysis, he proceeded to the next steps of the
9  analysis, stating: "In order to provide the claimant every benefit of the doubt, the undersigned
10 continues with the sequential evaluation process given the fact that the claimant has not been
11 currently engaging in [substantial gainful employment]." (AT 16.)

12          At step two, the ALJ concluded that plaintiff had the following "severe"
13 impairments: "Major depressive disorder and anti-social personality disorder." (AT 16.)  The
14 ALJ specifically rejected the state agency's determination that plaintiff had "no severe mental
15 impairment or no medically determinable mental impairment." (Id.)  The ALJ also noted
16 plaintiff's asthma condition, but found that plaintiff had no severe physical impairments at step
17 two. (Id.)  Plaintiff does not contest the ALJ's findings at step two.

18          At step three, the ALJ determined that plaintiff did not have an impairment or
19 combination of impairments that met or medically equaled one of the impairments listed in the
20 applicable regulations. (Id.)  In reviewing the criteria relevant to the assessment mental
21 impairments at step three of the sequential evaluation, the ALJ discussed plaintiff's mental health
22 treatment records and evaluations at length. (At 16-19.)  Plaintiff does not contest the ALJ's
23 findings at step three.

24          Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual
25 functional capacity ("RFC") as follows:

26          [T]he claimant has the residual functional capacity to perform the full

4

        range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform unskilled work with no frequent interaction with supervisors, co-workers, or the public.

(AT 19.) Relevant here, the ALJ did "not accord substantial weight to the opinion of consulting psychiatrist, Dr. Shohreh Ghaemian." (AT 20.) Instead, the ALJ relied on the opinions of Drs. Williamson and Canty, and plaintiff's other medical records. (Id.) Additionally, in assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found that plaintiff testimony was not credible to the extent that it conflicted with the assigned RFC. (See AT 19-20.) The ALJ relied, in part, on the third-party reports of Mr. Beal in discounting plaintiff's testimony and finding plaintiff not disabled. (AT 21.)

        Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff "is capable of performing his past relevant work as a Production Worker." (AT 21.) The ALJ found that plaintiff could perform his past work "as actually performed" because plaintiff's work at the newspaper "did not require frequent interaction with others." (Id.) As a result of the ALJ's finding at step four, the ALJ found that plaintiff was "not disabled" without reaching step five of the analysis.

II.    STANDARDS OF REVIEW

        The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

5

Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

III.  DISCUSSION

    A.    <u>The ALJ's Evaluation of Dr. Ghaemian's Opinion Is Free of Error</u>

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Shohreh Ghaemian, a consulting psychiatrist who essentially concluded that plaintiff was not capable of performing work on a sustained basis.  Dr. Ghaemian examined plaintiff once and produced a psychiatric evaluation. (AT 247-52.)  She ultimately opined that plaintiff "appear[ed] not capable of any gainful employment mostly due to his unpredictable aggressive behavior and prominent paranoia."  (AT 251.)  Dr. Ghaemian further opined that plaintiff's "ability to interact with colleagues and society [was] limited."  (Id.)  She diagnosed plaintiff as presenting "with prominent post-traumatic stress disorder symptoms and gross paranoia."  However, she later stated that the "presence of post-traumatic stress disorder maybe questionable," but "possible" due to plaintiff's "extensive incarceration and extent of violence in the prison system."  (See id.)

Rather than credit Dr. Ghaemian's opinion, the ALJ relied on the opinions of Drs. Williamson and Canty, who also examined plaintiff on one occasion.  (AT 20.)  Dr. Williamson,

an examining psychologist, ultimately opined that plaintiff "would physically and cognitively be able to work a typical workday." (AT 229.)  However, Dr. Williamson also recognized that plaintiff might very well have difficulty getting along with co-workers and responding to customers appropriately. (Id.)  Similarly, Dr. Canty, an examining psychiatrist, ultimately concluded that "[g]iven his antisocial personality [, plaintiff] should seek out fairly isolative independent jobs." (AT 274.)  Dr. Canty added that plaintiff "could probably interact casually with a few coworkers," and "would not have difficulty attending or completing appropriate work." (Id.)  Contrary to Dr. Ghaemian, neither Dr. Williamson nor Dr. Canty diagnosed plaintiff with gross or prominent paranoia or any measure of post-traumatic stress disorder.

       The ALJ did "not accord substantial weight" to Dr. Ghaemian's opinion. (AT 20.)  The ALJ concluded that Dr. Williamson's and Dr. Canty's opinions were more consistent with the objective medical evidence than Dr. Ghaemian's opinion, especially in regards to Dr. Ghaemian's diagnoses of gross paranoia, suggestion of possible post-traumatic stress disorder, and determination that plaintiff was completely unable to interact with colleagues and society. (Id.)

       The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830.  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id.  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id.  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Id. at 1041-42 (citing Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ( "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")).

The ALJ thoroughly reviewed and discussed the evidence in the record, including the opinions of Drs. Ghaemian, Williamson, and Canty, and resolved conflicts among those opinions. The ALJ performed the task required of him, finding that the opinions of Drs. Williamson and Canty regarding plaintiff's functionality were more consistent with the entire record than Dr. Ghaemian's opinion. Nevertheless, plaintiff offers four bases for determining that the ALJ erred by not giving substantial weight to Dr. Ghaemian's opinion.

First, plaintiff contends that the Global Assessment of Functioning ("GAF")[4] score of 48 assigned by Dr. Ghaemian was more consistent with two other GAF scores in the record, one of which was assigned by a social worker. Second, similarly, plaintiff contends that Dr. Ghaemian's opinion is more consistent with plaintiff's other medical records because Dr. Ghaemian diagnosed plaintiff with major depressive disorder and suggested a possible diagnosis of post-traumatic stress disorder, while Drs. Williamson and Canty did not.[5] The undersigned rejects plaintiff's attempt to pick-and-choose a few potentially favorable facts from the record in an attempt undermine the ALJ's decision. The ALJ considered and noted all these facts in his

---

[4] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV-TR").

[5] Of course, the ALJ found that plaintiff suffered from major depressive disorder at step two and, accordingly, did not reject that aspect of Dr. Ghaemian's opinion.

8

decision, weighed those facts along with the rest of the record, and drew conclusions about which physicians' opinions to accord more weight. Setting aside several problems with plaintiff's analysis, including that some of the determinations that plaintiff points to were made by a social worker and not a physician, the undersigned will not disturb the ALJ's thorough decision when it is supported by the record as a whole.

Third, plaintiff suggests that Dr. Williamson essentially diagnosed plaintiff with paranoia, consistent with Dr. Ghaemian's diagnosis, even though Dr. Williamson did not actually make such a diagnosis. Plaintiff asks the court to infer a diagnosis of paranoia even though Dr. Williamson specifically concluded that plaintiff showed "no evidence of a mood or psychotic disorder." (AT 228.) Plaintiff's requested inference is improper and not supported by the record.

Fourth, plaintiff argues that plaintiff's own testimony, as characterized by plaintiff's counsel, was consistent with Dr. Ghaemian's opinions and did not reflect an ability to engage in sustained work activity. Plaintiff's counsel's characterization of plaintiff's testimony simply does not provide a proper basis to undermine the ALJ's resolution of the conflicting opinions of the examining psychologist and psychiatrists.

The ALJ thoroughly reviewed the opinions and evidence in the record and resolved conflicts in the evidence. None of plaintiff's arguments to the contrary is persuasive. Accordingly, the ALJ fulfilled his obligation to provide specific and legitimate reasons for discounting Dr. Ghaemian's medical opinion.

B.   The ALJ's Credibility Determination Is Free of Error

Next, plaintiff attacks the ALJ's credibility determination. (Pl.'s Mot. for Summ. J. at 15-21.) The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms [were] not credible to the extent they [were] inconsistent with the above [RFC]." (AT 20.)

////

////

9

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that he cannot work because he gets mood swings. Some days he is high intensity and could perform a job. Then he gets a low mood swing and isolates himself for three or four days. He does take medication but it helps and does not cure. He is not able to function in crowds of people. He can be down thirteen to fourteen days in one month. He is depressed at not being able to see his four-year old daughter. He has been receiving treatment from El Hogar [Mental Health and Community Center, Inc.] for two years. He takes medications Zoloft, Resperdal [*sic*], and Ambien, but he still has mixed feelings and depression (Testimony).

(AT 20; see also AT 18 (summarizing portions of plaintiff's testimony including statements that plaintiff's "concentration is slow" and that he does not socialize or have friends).) The ALJ's summary appropriately characterizes plaintiff's testimony regarding the reasons plaintiff believes he is unable to work. (See AT 74-77.)

In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant]

10

complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

The ALJ appears to have concluded that plaintiff satisfied the first step of the credibility analysis. Because neither the ALJ nor the Commissioner cited to evidence of malingering in the record, and there appears be none, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.

At the outset, the undersigned notes that the ALJ credited plaintiff's testimony regarding his difficulty with socialization, crowds, and authority figures to some degree in that the RFC included a limitation that plaintiff's work not include frequent interaction with supervisors, co-workers, or the public. (AT 19.) The undersigned concludes that the ALJ provided clear and convincing reasons for finding plaintiff not entirely credible in other respects.[6]

The ALJ reasoned that plaintiff's testimony regarding his functional limitations and complete inability to work due to his mental impairment was contradicted by plaintiff's medical records and the opinions of Drs. Williamson and Canty. (AT 20.) Dr. Williamson and Dr. Canty opined that plaintiff could perform appropriate work during a typical workday so long as plaintiff's interaction with supervisors and others was limited. (See AT 229, 274.) Plaintiff does not directly challenge the ALJ's reliance on these medical opinions and the medical records insofar as the adverse credibility finding is concerned. Instead, plaintiff argues that his testimony was more consistent with Dr. Ghaemian's opinion. Because the ALJ properly devalued Dr. Ghaemian's opinion, plaintiff's argument is essentially immaterial in regards to the credibility

---

[6] The ALJ did not rely on plaintiff's extensive criminal history and drug use as a basis for questioning plaintiff's credibility.

determination.

The ALJ also relied on plaintiff's activities of daily living in finding plaintiff not entirely credible. (AT 18, 21.) In addition to the examining psychologist's and psychiatrist's assessments and plaintiff's testimony regarding plaintiff's ability to perform daily activities (AT 17-18, 229, 272, 274), the ALJ relied on the third-party function reports of plaintiff's friend and landlord, Mr. Beal (AT 21). The ALJ noted and credited Mr. Beal's observation that plaintiff tended to isolate himself and not interact with others, but the ALJ also noted Mr. Beal's observations that plaintiff was able to cook, care for his room, use public transportation, shop, handle his own finances, and exercise, among other things. (Id.; see also AT 141-48, 179-86.) Mr. Beal's observations contradict plaintiff's testimony that he cannot work, and they support the ALJ's credibility finding. As discussed below, the ALJ also properly evaluated and addressed Mr. Beal's reports.

The ALJ also noted conflicting observations of plaintiff made by Social Security Administration representatives during face-to-face interviews with plaintiff. (AT 21.) The ALJ noted that, in connection with a March 2007 interview, a Social Security Administration representative observed that plaintiff had difficulty remembering dates, concentrating, talking, and answering. (AT 21, 121.) However, a Social Security Administration representative observed no such difficulties during a June 2007 interview. (AT 21, 171.) Although plaintiff attempts to explain that these differing observations are consistent with plaintiff's testimony that he has good days and bad days, these observations equally undermine plaintiff's credibility. As such, the undersigned does not re-weigh the evidence as proposed by plaintiff or conclude that the ALJ's reliance on these observations was improper.

The ALJ provided clear and convincing reasons for discounting plaintiff's testimony that are supported by the record. Accordingly, the undersigned concludes that the ALJ did not err in assessing plaintiff's credibility.

////

1      C.     The ALJ Did Not Err In Addressing James Beal's Statements

Plaintiff contends that the ALJ erred by failing to accurately summarize the third-party function reports provided by Mr. Beal and thereby tacitly rejected those portions of Mr. Beal's reports that the ALJ did not specifically address in the written decision. (Pl.'s Mot. for Summ. J. at 19-21; see AT 141-48, 179-86.) In regards to Mr. Beal's reports, the ALJ stated:

> Mr. Beal essentially supported the finding that the claimant did not interact with others and tended to isolate. However, Mr. Beal reported that the claimant cooked, cared for his room, used public transportation, shopped, handled his own finances, worked out, walked three miles, and could pay attention for a long time (See: Third Party Function Report). The undersigned accords Mr. Beal's statement substantial evidentiary weight as it supports the finding that the claimant is capable of working.

(AT 21.)

In assessing whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's ability to work. Bruce, 557 F.3d at 1115 (citing Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006), and 20 C.F. R. §§ 404.1513(d)(4), (e)). Such testimony "*cannot* be disregarded without comment." Id. (citation omitted). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" Valentine, 574 F.3d at 694 (modification in original) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). "[T]he reasons 'germane to each witness' must be specific." Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054).

Here, the ALJ considered Mr. Beal's third-party reports, addressed them in the written decision, and did not reject them. Instead, the ALJ accorded "Mr. Beal's statement substantial evidentiary weight as it supports the finding that the claimant is capable of working." (AT 21.) Nevertheless, plaintiff contends that the ALJ erred by not relating in his written decision every single observation made by Mr. Beal. Plaintiff contends that the ALJ's omission of "corroborating statements" resulted in the tacit rejection of Mr. Beal's statements without providing reasons germane to Mr. Beal.

The undersigned finds that the ALJ did not err in considering and discussing Mr.

Beal's reports. First, plaintiff has not cited any requirement that the ALJ recite every single observation from a third-party statement in the written decision. Second, although plaintiff includes a laundry list of Mr. Beal's observations in his moving papers, including many of the observations that were captured by the ALJ's discussion, plaintiff does not clearly identify which particular "corroborating statements" were allegedly rejected by the ALJ. After reviewing Mr. Beal's reports, the undersigned concludes that plaintiff is primarily referring to Mr. Beal's observations that plaintiff did not get along well with others, did not get along with authority figures, and did not handle stress or changes in routine well. (See AT 147, 182, 185.) However, even assuming the failure to specifically address these aspects of Mr. Beal's reports was error, such error was harmless because the ALJ's discussion and RFC adequately captured these observations, and crediting Mr. Beal's statements would not alter the ultimate non-disability determination. See, e.g., Robbins, 466 F.3d at 885 (stating that an ALJ's error is harmless if it is "'inconsequential to the ultimate nondisability determination'") (citation and quotation marks omitted). Accordingly, the undersigned concludes that the ALJ did not err in evaluating Mr. Beal's statements and, even if the ALJ erred, such error was harmless.

    D. <u>The ALJ Was Not Required to Use A Vocational Expert at Step Four</u>

    Finally, plaintiff argues that the ALJ erred by not using the services of a vocational expert to determine whether plaintiff could perform his past work "where the medical evidence *suggests* that a claimant's impairments *may* amount to a nonexertional impairment."[7] (Pl.'s Mot. for Summ. J. at 22 (emphasis in original) (citing <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001)).) Although the Commissioner's counter-argument is somewhat

---

[7] In this portion of plaintiff's motion, plaintiff also argues that the ALJ erred by not properly formulating the RFC. (See Pl.'s Mot. for Summ. J. at 21.) Plaintiff's argument is entirely contingent on the success of his arguments regarding the treatment of Dr. Ghaemian's medical opinion and plaintiff's testimony. Because the undersigned already found that the ALJ's determinations as to Dr. Ghaemian's opinion and plaintiff's credibility are free of error and supported by substantial evidence, the undersigned concludes that plaintiff's related argument about the proper formulation of the RFC summarily fails.

unresponsive to plaintiff's argument, the Commissioner does argue that the ALJ was not required to use a vocational expert at step four. (See Def.'s Cross-Motion for Summ. J. at 14-15.)

The applicable regulation provides that an ALJ *may* consult a vocational expert to determine whether the claimant can return to his or her past work. See 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity" (emphasis added).); accord 20 C.F.R. § 416.960(b)(2). However, the regulations do not *require* an ALJ to use a vocational expert at step four. Case law is in accord that at step four an ALJ's determination that a claimant can perform past work need not be supported by the testimony of a vocational expert. See Mathews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding that because the claimant "failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not required"); accord Campos v. Astrue, 565 F. Supp. 2d 1179, 1184 (C.D. Cal. 2009); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (holding that the ALJ's determination that the claimant could perform past work made it unnecessary for the ALJ to call a vocational expert at step five).[8] Accordingly, plaintiff has not demonstrated that the ALJ erred by not consulting with a vocational expert.

Morever, Bruton is inapplicable here. In Bruton, the ALJ determined at step four that the claimant could not perform his past work and, at step five, determined that the claimant could perform the full range of light work relying on the Medical-Vocational Guidelines (also

---

[8] See also Hopkins v. Astrue, 227 Fed. App. 656, 657 (9th Cir. 2007) ("Although the vocational expert's testimony support's Hopkins's position, the ALJ was not required to call a vocational expert at step four."). Decisions of this court, albeit unpublished, are also in accord. See, e.g., Phongsuwan v. Astrue, No. CIV S-08-2193 GGH, 2010 WL 796969, at *8 (E.D. Cal. Mar. 5, 2010) (unpublished) ("The ALJ may consider the testimony of a vocational expert to determine if plaintiff can do his past relevant work; however, the ALJ is not required to call such an expert at the fourth step" (citations omitted).)

1 referred to as the "grids") instead of soliciting the testimony of a vocational expert. Bruton, 268
2 F.3d at 826. The Ninth Circuit Court of Appeals held that the ALJ erred by relying on the grids
3 and not calling a vocational expert to determine whether the Commissioner had borne its burden
4 at step five to show that claimant could perform other jobs in the national economy. See id.
5 at 827-28. It reasoned that there was evidence of "significant non-exertional impairments,"[9]
6 which made reliance on the grids inappropriate under Circuit precedent. Id. at 828.

Bruton is distinguishable from the present case. This case does not involve the ALJ's determination at step five or his application of the grids. Plaintiff's challenge is directed at the ALJ's determination at step four that plaintiff could perform his past work as he previously performed it, not a determination at step five that plaintiff could perform other work in the national or regional economies. Moreover, plaintiff has the burden at step four, which distinguishes a case such as Bruton, which involved a determination at step five where the Commissioner has the burden. Thus, plaintiff's reliance on Bruton is misplaced, and the undersigned will not impose additional obligations on the ALJ that are not required by applicable law.[10]

Plaintiff's argument regarding the use of a vocational expert is unpersuasive. Accordingly, the ALJ did not commit error at step four.

////

////

////

---

[9] Exertional limitations relate to "primary strength activities" such as sitting, standing, walking, lifting, carrying, pushing, and pulling. See 20 C.F.R. § 416.969a(b); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.6 (9th Cir. 1989). Nonexertional limitations include mental, sensory, postural, manipulative, and environmental limitations that do not directly affect primary strength activities. See 20 C.F.R. § 416.969a(c); Cooper, 880 F.2d at 1156 n.7.

[10] This is not the first time that this particular plaintiff's counsel has unsuccessfully attempted to make this argument to the undersigned. See Nicola v. Astrue, No. 2:08-cv-01662 KJN, 2010 WL 1759464, at *9-10 (E.D. Cal. Apr. 29, 2010) (unpublished).

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) is denied.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 18) is granted.

3. The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

DATED: September 16, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE